Good morning, your honors. Matt Campbell on behalf of Timothy Binford. I'll be doing my best to reserve three minutes for rebuttal. At the outset, as a sort of housekeeping matter, we've raised in essence two separate arguments here. One a trial-related issue, one a sentencing issue. The government in its answering brief effectively conceded that under the current state of the law, Washington robbery would not qualify. But raised a plain error type of argument. I was informed this morning by the government's counsel that the government will no longer be advancing that plain error argument, effectively conceding that reversal is necessary. That takes care of the easiest issue. So that being said, I don't plan on addressing that any further. Thank you. Thanks to the government for its acknowledgement. Okay. This case proceeded toward trial on a single felon in possession of a firearm count under 922 G1. On the eve of trial, literally, the government superseded to add an alternate theory that Mr. Binford was a habitual user of drugs in possession of a firearm under 922 G3. The only reason for the government to add this alternate theory was to allow it to admit otherwise inadmissible evidence of drugs. Evidence which the government previously conceded would not be admitted. The admission... Well, they were only inadmissible because there was no charge relating to drugs, right? There was no charge relating to drugs, and clearly under the felon in possession charge by itself, they would have been inadmissible, but for the superseding. There's no constitutional problem or anything like that, independent of... Independent of the normal 404B and 403 and that type of analysis. The admission... We believe the admission of that drug evidence was erroneous for numerous reasons. First, it was unduly prejudicial and should have called for an election of theory. Second, retroactive misjoinder requires reversal of the conviction. Third, superseding on the eve of trial constituted unfair surprise. And fourth, the government's reversing of its position after the motion in Lemonet, excluding the evidence that was granted, amounted to, in effect, vindictive prosecution. We note that these errors were particularly egregious in light of the fact that the government had no evidence of habitual, long-time use of drugs, which is required under 922 G3. And it was because they had no such evidence that the district court granted the Rule 29 motion on the user in possession post-verdict. So then you really come down... Your client doesn't have that charge. You can really come down to a question of prejudice, don't you? Yes, Your Honor. And given the fairly... What was at issue with respect to the gun charge that wouldn't make it harmless error once the drug charge was dismissed? Well, if the drug charge had been dismissed at the time that the initial motion was made so the jury never heard about the drug charge, the jury would never have heard about considerable amounts of evidence regarding drugs, namely methamphetamine residue, drug paraphernalia. Right, but the fact is that the charge that stuck... Felon in possession. Right. The gun was in the bag, right? Correct. He's a felon and that was admitted and stipulated to. Correct. So even though the drug evidence may paint him as an unsavory person in that regard, how did it prejudice the fact that kind of dead bang the gun is in the bag? I think it prejudiced the fact because it underscored that it brought drugs into a case that effectively drugs were not involved in. And what that did, if we look to cases and we cited the Blackstone case, which I believe was Judge Goodwin's case, that linking drugs to guns raises the specter that a person is a bad person who is deserving of punishment for whatever misconduct they had committed. The question presented in this case effectively was who put that gun in that bag? They could have charged it all along. And your client was convicted of only one count, right? When they superseded, they only charged one count with two alternate theories in there. Right. And so in looking at the cases that you rely on, they appear to be cases in which there were multiple counts so that the prejudice was that the defendant could have been convicted of two counts for the same conduct. And that isn't true here, is it? Many of the cases do arise in the situation that you raise, but we think that from a 404 and or 403 analysis, it still holds. Do you have any authority for that? Well, if we look at cases like Blackstone, like the Bradley case that I cited, they discuss that the danger presented by erroneous 403, 404B type of evidence is that the jury will convict when it's otherwise unsure of guilt because it's convinced that the defendant is a bad person deserving of punishment. And that would be a good argument if there were significant uncertainty about the felon in possession. But I haven't really heard from you what evidence there was that would suggest that this would prejudice and also what evidence there was that would make the felon in possession charge somewhat sketchy because there wasn't sufficient evidence. Certainly, Your Honor. The issue here, this arose from a traffic stop. There were two individuals in the car, Mr. Binford and Mr. Jackson. Ultimately, the evidence showed that the officers believed that both of them were under the influence of drugs. The evidence showed that there was a backpack that had a gun in it. But there was ample opportunity for either Mr. Binford or Mr. Jackson to put that firearm in the bag. There was no corroborating evidence in the form of, say, DNA or fingerprints that linked Mr. Binford to that specific gun. What else was in that bag besides the gun, the drugs, and was there a wallet? Oh, Your Honor, candidly, it was never. But that's why I'm asking. There was a wallet and some identification. Sure. I will state. But we haven't heard about that. I will state candidly that Mr. Binford, it was not raised at trial that perhaps the bag wasn't Mr. Binford's. The question was simply who put the firearm in the bag. And there were two possibilities that seemed reasonable, either Mr. Jackson or Mr. Binford. That's the issue. We're not contesting but that the bag was Mr. Binford's. We concede that point. Okay. Do you want to reserve the remaining time? Yes. Thank you. Good morning, Your Honors. May it please the Court, I'm Tim Holmes representing the government from Spokane. So focusing on the superseding indictment, the government had a right to seek to supersede the indictment, to present the superseding theory to the jury, to the grand jury. The grand jury returned an indictment. Well, it's pretty clear the only reason you did it was to get in this evidence, right? It's not the only reason. It's an important reason to . . . I mean, overall, my job is to try to present as complete and clear a case to the jury as I can. That's complete with regard to . . . Why do you have to do it the day before trial? I mean, that seems to me to be, you know, make it very difficult. I know there were some discussions about it, but it's not . . . You know, you don't go to the grand jury on this charge. All the evidence was there before, all the ability to charge was there, and then voila, the day before trial, go to the grand jury and get a new charge. How does the government defend that chronology? Okay, the chronology was that when I returned to the case and appeared at the second pretrial hearing, this was still basically the first trial setting. The case had been set for trial, had been moved. On January 14th, it had been moved to February 23rd. So at the start of that pretrial hearing, on January 22nd, the trial date . . . The status quo was the trial date was February 23rd, not February 4th. And it was at that hearing that I said, you know, I'm back on the case. I am exploring this possibility of superseding the indictment. There had not been a formal motion to exclude evidence. There had not been any briefing on that issue. There had not been any explanation to the court as to exactly what was in the bag. And the court had . . . There had been no explanation of what the possible defense theories were. So the question of the relevance of that drug evidence . . . The relevance that evidence of other items in the bags was still up in the air. And it was still something that was being contested. So I told the court, I told counsel that I intended to supersede the indictment if I could. Now in terms of the evidence, we were still waiting on drug analysis. We couldn't present . . . ask for a superseding indictment. At least I couldn't go back and ask for a superseding indictment unless I knew for sure that we had the drug analysis. Is that in the record? It's in the grand jury record. But I believe it was asked the question . . . When did the government receive that confirmation? It was just before grand jury. I asked to have that expedited. And we were able to obtain that. So notice had been given as to what the government's intent was. And the court then moved the trial date or advanced the trial date from February 23rd. Originally it wanted to set it on February 2nd. I'd say government counsel had a medical appointment on that date. The court accommodated that and reset it for February 4th. And that left February 3rd available for the government to present it. And that was the only date that the government could have presented to the grand jury. So the government did. It did so having provided as much notice as possible to the court and to the defendant. So it's not something that was done by sleight of hand. It was done through . . . the timing of it was driven in part by the court moving the trial ahead from where it was set. When I originally told the court I was contemplating a superseding indictment, and the court did that because a date had opened up. And I believe the court wished to accommodate the defendant as much as possible in proceeding the trial as quickly as possible. So that's how that happened. Now, I didn't believe that the evidence from the bag was inadmissible. And I was vigorously arguing on a secondary level that it should come in in any event because it was necessary for the government to tell a complete story and present a coherent theory about what happened. Well, the evidence was the drug paraphernalia was just indicated that it was for personal use. Isn't that right? Yeah, there were several dime baggies. There was a scale. Those kinds of things were not necessarily indicative of personal use. But I wasn't making the argument that the jury should infer that the gun was there to protect him as a drug trafficker. I simply was arguing that he was a drug user and that that was an alternative theory for possession. Now, in doing so, one of the things I was concerned about was what happened in this case because the defendant told the police officer when he was asked, do you want anything taken to jail? He said, I want my bag taken with me to jail. So the whole defense theory was really, why would he have said that if he knew there was a firearm in the bag? And therefore, it must have been Charlie Jackson who put the firearm there. Charlie Jackson testified. He denied knowing anything about the firearm. So in terms of the prejudice here, there was testimony from Charlie Jackson who looked at the jury and denied knowing anything about the firearm. However, the point is, by excluding the drug evidence, the defense is artificially strengthening its argument that the defendant would not have asked for the bag to go to the jail unless it knew that there was no gun. However, we do have case law that where knowledge of the gun is disputed, that the evidence of personal use drug paraphernalia is not admissible to show knowledge. And so because the general principle that you use guns in order to protect the drugs doesn't apply. It wasn't offered for that purpose. That's not why the government offered it. I didn't make that argument. I didn't present it that way. The way I argued it was to rebut the defense theory that he would not have said, I want that bag to go with me unless he believed there was no firearm in there. Because my argument was, look, there were other things in the bag. There were other weapons, which the government was not able to get into in much detail. But we talked about it a little bit just in terms of where the firearm was located in relation to the drugs. It was not at the top of the bag. It was stuffed down in the middle of the bag beneath a very sharp object. So my rebuttal to the defense argument was there were other things in that bag, including drug paraphernalia, including drug residues, that this defendant would also not have wanted to go to the jail. So it was relevant because it tended to rebut the specific theory that the defense was trying to raise. And by excluding it, you gave the defense this open ground to argue something that really was based upon something that wasn't true. So let me just say, though, that because why would anybody ever charge two theories in a 922G case? Because there are plenty of examples in the case law where it's done and it's not really explored. I would suggest, in addition to the government, and I feel a responsibility to present as complete and coherent, a case that includes the legal theories, that includes the evidence, but also that firearm cases can be controversial, particularly in the West, that by providing a jury with an alternative means to consider, you're giving them broader ground, more space within which to deliberate and consider the defendant's guilt, and that it's helpful to do that and it's not improper to do that. So the timing was not something that I was in control of. I tried to manage it as best I could through providing notice. And then I was stuck with the dates that I had. And then the defense made its own decisions about how to proceed to trial and on what time they wanted to do so. If the defense had asked for it . . . No continuance request, is that right? No continuance request. And I think the one reason is because if they had requested a continuance, I would have had more opportunity to further develop my case. The defendant did have a positive urinalysis for methamphetamine the day before he was stopped and arrested. That evidence would have taken more logistical effort because the urinalysis testing was done out of the district. So a continuance may have benefited the government actually more than it would have benefited the defendant. I think that was a defense strategy. It was their call. But I don't think at the end of the day the government acted improperly or that the decisions made unduly prejudiced the defendant. Thank you. To address the government's arguments and the court's questions, I think it's clear that the only reason the government did supersede was to simply get this evidence in. Because by adding this theory, the government actually took on an additional burden, that is to show that Mr. Binford was a habitual user of drugs. If we look at what the government was required to prove, Mr. Binford at the time of superseding had already stipulated under old chief. So the only issue the government was going to have to prove at trial was that Mr. Binford actually possessed that firearm. By adding this alternative theory that the government says was necessary, what it required itself to do, if that theory would be accepted, would be to prove not only that he possessed the firearm, but that he was a habitual user. And the evidence shows, and Judge Peterson found, that the government had no evidence of that and realistically could not think it did. So the only purpose was to bring in this drug evidence. The government says that it hadn't decided yet whether or not it was going to try. If it wanted to reverse the ruling that Judge Peterson had already made, it could very easily have filed a motion to reconsider. It didn't do that because it knew that the evidence wouldn't come in but for this charge, a charge that it had no evidence of. The government did note that there was a dime bag and some scales. I would proffer that those are perfectly consistent with personal use and that Judge Schroeder is correct that the Ninth Circuit case law says evidence of personal use is generally not appropriate in felon in possession cases. The government talked about the need for this evidence because why would Mr. Binford want to bring the bag if it was his firearm? Well, if its theory is that he wasn't thinking clearly, they had plenty of testimony from several different officers who testified that he was either slurring his words or not remembering things. So it had that evidence. That's not a reason why it needed to get into all of this evidence, evidence which according to precedent would otherwise be inadmissible. It talks about the need to rebut the defense's theory. But as has come out, this case was proceeding, to use Judge Peterson's phrase, at warp speed. At that point, the government couldn't be aware what the defense theory was. And to add, to supersede in this manner at the eve of trial in the hope of defeating a defense theory seems speculation at best. And then in regard to the continuance issue, it's our position, and we briefed this briefly, that the defense isn't required to move to continue to prevent another constitutional or statutory violation under the doctrine of unconstitutional conditions. So we don't think we were required to ask for a continuance. We should have been allowed to go to trial on the charge that had been raised all along. Thank you. Thank you. Thank both counsel for your argument this morning. The case of United States v. Binford is adjourned.
judges: Goodwin, Schroeder, McKeown